UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK ANDREW SMITH, JR.,

        Plaintiff,        Civil Action No. 20-12013

v.        Mark A. Goldsmith
        United States District Judge

TIM AIMS, *et al.*,        David R. Grand
        United States Magistrate Judge

        Defendants.
_____/

# REPORT AND RECOMMENDATION TO GRANT DEFENDANT WELTON'S MOTION FOR SUMMARY JUDGMENT (ECF No. 41)

*Pro se* plaintiff Patrick Andrew Smith, Jr. ("Smith") commenced this action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), alleging violations of his rights by various officials and institutions of the City of Luna Pier, Monroe County, and Erie Township. (ECF No. 1). Smith's complaint arises out of a police interaction at his home following a domestic incident between Smith and his wife on July 22, 2018.

One of the many named defendants, Derrick Welton ("Welton"), filed a motion for summary judgment on May 26, 2021, asserting that Smith's claims against him must be dismissed, as there are no disputed material facts and he is entitled to judgment as a matter of law. (ECF No. 41). Smith filed a response on June 19, 2021[1] (ECF No. 47), and Welton

---

[1] Prior to the filing of Welton's motion for summary judgment, Smith filed a document titled "Plaintiff Opposes Defendant's Derrick Welton Motion to Dismiss." (ECF No. 26). Rather than

filed a reply brief on July 7, 2021 (ECF No. 51).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the following reasons, the Court **RECOMMENDS** that Welton's Motion for Summary Judgment **(ECF No. 41)** be **GRANTED.**

## II. REPORT

### A. Factual Background

Smith alleges that on July 22, 2018, he was "improperly accused of domestic abuse" after he and his wife, Jennifer Smith, had a "marital disagreement," during which Smith punched a mirror, and, at some point, threw a dresser drawer, accidently striking his wife with its contents. (ECF No. 1, PageID.13, 16). In the aftermath of the "marital disagreement," Smith instructed his nephew, Gary Herin, to "call 911 for medical for Jennifer [S]mith," at which point Smith left the house to treat his own injuries. (*Id.*, PageID.13). Defendant Drew Weiler, an officer with the Luna Pier Police Department, arrived at the Smith residence to respond to the situation. (*Id.*, PageID.16). Officer Weiler's arrival allegedly cascaded into a series of abuses of Smith by multiple law enforcement personnel; however, given the extremely limited nature of Welton's

---

prescient, this filing appears to have been made in response to Welton's filing of an answer and affirmative defenses. (ECF No. 15). Nevertheless, in order to give Smith the benefit of the doubt, in ruling on Welton's motion for summary judgment, the Court will consider the arguments advanced by Smith in both filings.

involvement in the situation, the Court will focus on the alleged facts surrounding Smith's claims against him.

Smith's claims against Welton stem from Smith's care at ProMedica Monroe Regional Hospital, after he was taken there by Officer Weiler on July 22, 2018. (*Id.*, PageID.17, 19). Smith alleges that, while there, "[s]hortly after discussing his abdominal evisceration surgery with his nurse Derrick Welton RN at Promedica Monroe Regional Hospital, Derrick Welton RN and Officer Drew Weiler, abandoned the plaintiff." (*Id.*, PageID.19). Smith further alleges that Welton and Officer Weiler went to the hallway "to privately discuss Mr. Smith's medical case without consent or privilege." (*Id.*). Smith accuses Welton of slander per se by virtue of making "false statements imput[ing] a morally culpable criminal behavior to Mr. Smith." (*Id.*, PageID.22). To summarize, then, Smith accuses Welton of (1) "abandon[ing]" him; (2) discussing with Officer Weiler his "medical case" without his consent; and (3) publishing a false and defamatory statement about him to Officer Weiler.

In his motion for summary judgment, Welton argues that Smith's claims against him fail for several reasons. First, Welton argues that he is not a state actor for purposes of any claims asserted against him pursuant to 42 U.S.C. § 1983. (ECF No. 41, PageID.507). Second, Welton argues that he had no patient-nurse relationship with Smith and, even if he did, Smith did not properly bring a medical claim under state law.[2] (*Id.*).

---

[2] Indeed, Smith concedes in his response to Welton's motion that he "alleges no medical malpractice claim." (ECF No. 47, PageID.572). Thus, the Court need not consider the merits of Welton's argument that Smith failed to properly bring such a claim against him. (ECF No. 41, PageID.511-14).

3

Welton also asserts that he had no access to Smith's "medical case" information; therefore, he could not have discussed it with anyone, and, regardless, Smith has no private right of action for any breach of protected health information. (*Id.*, PageID.507-08). Finally, Welton argues that Smith's defamation claim against him is time-barred. (*Id.*, PageID.508). For the reasons set forth below, the Court finds merit to Welton's arguments and determines that summary judgment in his favor is warranted.[3]

### B.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court

---

[3] It bears mentioning that the vast majority of Smith's response to Welton's motion for summary judgment (ECF No. 47) pertains to defendants other than Welton. As set forth in greater detail below, nothing in Smith's brief shows a nexus between Welton and Smith's allegedly false arrest, his allegedly illegal search and seizure, the alleged violation of his *Miranda* rights, his custodial interrogation, or any violation of his Fourth, Fifth, Sixth, or Eighth Amendment rights.

4

of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

        *1.*    *Summary Judgment is Appropriate on Any § 1983 Claim Against Welton Because He is Not a State Actor*

In his complaint, Smith identifies Welton as "his nurse" at ProMedica Monroe Regional Hospital. (ECF No. 1, PageID.19). In an affidavit submitted with his motion for summary judgment, however, Welton avers that he is an emergency room technician, not a nurse. (ECF No. 41-1, PageID.521). Regardless, there are no other factual allegations in Smith's complaint connecting Welton's conduct to the constitutional claims at issue in Smith's lawsuit, other than his bald assertion – which is nothing more than an unsupported legal conclusion – that all of the defendants were "acting under the color of law." (ECF No. 1, PageID.12).

To prove a claim under 42 U.S.C. § 1983, including claims for violations of due process and deliberate indifference to a serious medical need – both of which Smith mentions in his responses to Welton's motion for summary judgment – a plaintiff must establish two essential elements: (1) deprivation of a right secured by the constitution or laws of the United States, (2) caused by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). If a plaintiff fails to make a showing on either essential element of a § 1983 claim, it must fail. *See Redding v. St. Eward*, 241 F. 3d 530, 532 (6th Cir. 2001). The under-color-of-state-law element of a § 1983 claim excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). Whether a defendant is a state actor depends on whether the defendant's actions are "fairly attributable" to the state. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995).

Here, there is no dispute that, during the course of his interaction with Smith at ProMedica Monroe Regional Hospital on July 22, 2018, Welton was acting in his capacity as a private citizen employee of a not-for-profit hospital[4] and, thus, is not subject to a claim under § 1983. (ECF No. 41-1, PageID.521). It is well established that private hospitals, as well as private individuals, are not "state actors" under § 1983. *See, e.g., Crowder v. Conlan*, 740 F.2d 447, 449-53 (6th Cir. 1984) (holding that a private hospital is not a state actor for purposes of § 1983); *Jeung v. McKrow*, 264 F. Supp. 2d 557, 571 (E.D. Mich. 2003) (holding that summary judgment was proper where the "under-color-of-state-law"

---

[4] *See* https://www.promedica.org/about-promedica/ (last accessed August 20, 2021).

requirement was not met as to a privately owned hospital operating as a not-for-profit entity or as to medical professional employees of the hospital, even though the hospital received public funds through federal welfare programs).

In one of his responses to Welton's motion for summary judgment, Smith argues that, at ProMedica Monroe Regional Hospital, Welton agreed with Officer Weiler of the Luna Pier Police Department to discuss Smith's "medicolegal" status.[5] (ECF No. 26, PageID.333). According to Smith, then, Welton was acting "under the direction and control" of Officer Weiler, thus becoming "an agent of the Police, acting under the color of law." (*Id.*). But Smith presents no legal authority from which the Court could conclude that Welton's mere agreement to discuss his "medicolegal" status with Officer Weiler rendered Welton an "agent of the Police." Indeed, the law is clear that "[a] person will not be acting as a police agent merely because there was some antecedent contact between that person and the police." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). Thus, just as "the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983," *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir.1987) (internal

---

[5] In another response to Welton's motion for summary judgment, Smith asserts that Welton "wear[s] different hats at different times" – i.e., he "appears to work as a nurse or emergency technician (EMT) at Promedica Monroe Regional Hospital and for the City of Luna Pier, 2) as a fireman of the Luna Pier Fire Department, 3) as councilman for the City of Luna Pier, or the mayoral office." (ECF No. 47, PageID.568). Regardless, however, there is no dispute that, on the date and time in question, Welton was working in his capacity as an EMT at ProMedica Monroe Regional Hospital; indeed, Smith admits as much in his response brief. (*Id.*, PageID.577) ("On July 22, 2018 Mr. Welton was acting either as a nurse or an EMT at Promedica Monroe Regional Hospital.").

7

quotations omitted), nor could Welton, by merely agreeing to engage in a conversation with a police officer, be considered a "state actor."

Moreover, Welton provided a detailed affidavit, in which he clearly demonstrates no agency relationship existed with Officer Weiler. Specifically, Welton averred:

1. On July 22, 2018, I was on shift and working as an emergency room technician at ProMedica Monroe Regional Hospital. I am not a registered nurse or "R.N."

2. While working that night I recognized my next door neighbor, plaintiff Patrick Andrew Smith, Jr., who had been brought to the hospital by law enforcement. Since I knew Mr. Smith personally, I approached him to ask him if I could get him anything, such as water or a blanket.

3. My interaction with Mr. Smith was purely out of common courtesy. I was not assigned to, nor did I take care of, Mr. Smith while he was at ProMedica Monroe Regional Hospital.

4. I did not look at or access Mr. Smith's medical records and knew nothing of his medical condition, except for what he was telling people openly at the hospital. Thus, I did not have any confidential medical information about Mr. Smith.

5. On July 22, 2018 I spoke with Officer Weiler and made small talk and exchanged pleasantries [with] him. However, I did not share any medical information about Mr. Smith, since I had no medical information to share.

6. In fact, I do not recall speaking to Officer Weiler about Mr. Smith at all. Additionally, it is not my habit and routine to speak about a patient at the hospital to law enforcement. Also, Mr. Smith was not my patient.

7. I had no further involvement with either Mr. Smith or Officer Weiler on July 22, 2018.

8. I was not working within the scope of any employment, or on behalf of or as a representative, of any state or local governmental agency or entity on July 22, 2018.

8

(ECF No. 41-1, PageID.521).

Smith has not rebutted any of these averments. To summarize, then, Smith has not raised a material question of fact either that Welton was a state actor, or that Welton committed any act that caused Smith's alleged false arrest or any other alleged deprivation of his constitutional rights.[6] Smith was already in police custody when he was brought to the hospital, where he had his brief interaction with Welton on July 22, 2018. Smith has come forward with no evidence that Welton made any statements about Smith or otherwise caused Smith to be falsely arrested or detained. Because there is no genuine issue of material fact as to whether Welton took any action that can be "fairly attributable" to the state, Smith's § 1983 claims against him must fail.[7]

---

[6] To the extent Smith asserts a claim against Welton for deliberate indifference to a serious medical need, such a claim would fail even if Welton was a state actor. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* Here, Smith's only allegation in this regard is a vague claim that Welton and Officer Weiler "abandoned" him. (ECF No. 1, PageID.19). There is no allegation that Welton either completely denied Smith medical care or provided inadequate medical care. And, in fact, Welton's affidavit establishes that he provided *no* medical care to Smith at all. (ECF No. 41-1, PageID.521). Thus, to the extent Smith asserts a deliberate indifference claim against Welton, such a claim fails.

[7] Smith also asserts in his response brief that Welton's discussion with Officer Weiler of his "medicolegal status" constitutes a conspiracy under 42 U.S.C. § 1985 to violate Smith's Fourth Amendment rights. (ECF No. 26, PageID.333). Similarly, he later asserts that Welton and Officer Weiler were members of a "joint enterprise" and Welton "aided and abetted" his allegedly false arrest by publishing false statements to Officer Weiler. (ECF No. 47, PageID.573, 576). There are several problems with these assertions. First, Smith pled no such claims in his complaint. Second, Smith had already been arrested and transported to ProMedica Monroe Regional Hospital at the time Welton spoke with Officer Weiler; thus, even assuming that Welton discussed with Officer Weiler Smith's "medicolegal status," the allegedly false arrest had already occurred. And, finally, in order to establish a conspiracy under 42 U.S.C. § 1985(3), a plaintiff must show that the alleged conspiracy was motivated by racial or other class-based animus. *See Collyer v. Darling*,

9

> ### 2. *Smith Has No Private Cause of Action for Disclosure of Protected Health Information*

In his complaint, Smith also alleges that Welton discussed his "medical case" with Officer Weiler without his consent. (ECF No. 1, PageID.19). To begin with, the undisputed record evidence establishes just the opposite, as Welton submitted an affidavit specifically averring:

> 4. I did not look at or access Mr. Smith's medical records and knew nothing of his medical condition, except for what he was telling people openly at the hospital. Thus, I did not have any confidential medical information about Mr. Smith.
>
> 5. On July 22, 2018 I spoke with Officer Weiler and made small talk and exchanged pleasantries [with] him. However, I did not share any medical information about Mr. Smith, since I had no medical information to share.
>
> 6. In fact, I do not recall speaking to Officer Weiler about Mr. Smith at all. Additionally, it is not my habit and routine to speak about a patient at the hospital to law enforcement. Also, Mr. Smith was not my patient.
>
> 7. I had no further involvement with either Mr. Smith or Officer Weiler on July 22, 2018.

(ECF No. 41-1, PageID.521). In the face of this sworn testimony, Smith has come forward with no facts to the contrary. Thus, Smith has not established a genuine issue of material fact as to whether Welton discussed his "medical case" with Officer Weiler without his consent.

Moreover, even assuming the truth of Smith's allegations in this respect, it is not at all clear from Smith's complaint what statutory provision was allegedly violated. The

---

98 F.3d 211, 233 (6th Cir. 1996). Here, Smith has made no such allegation.

10

Health Insurance Portability and Accountability Act ("HIPAA"), cited by Smith in his response brief (ECF No. 47, PageID.582), does not provide for a private right of action,[8] so that statute cannot be the basis for a claim by Smith against Welton for allegedly disclosing his "medical case" without his consent.[9] *See Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011) (citing cases). In his initial response brief, Smith mentions both the "Patient Rights Statute (MCLA 333.20201)" and the "Federal Privacy Act of 1974, 5 USCA 552a(1988)" (ECF No. 26, PageID.336, 343), although neither of these statutes were mentioned in his complaint,[10] and neither applies to his allegations that Welton purportedly discussed his "medical case" with Officer Weiler.

In his response briefs, Smith also asserts – for the first time – that Welton's alleged statements to Officer Weiler "aided, abetted, and encouraged Drew Weiler to detain the plaintiff[,]" which constitutes negligence per se. (*Id.*, PageID.343-44; *see also* ECF No. 47, PageID.582-83). Setting aside for a moment the fact that this claim also was not pled against Welton in Smith's complaint, he simply cannot prevail on such a claim.

Under Michigan law, "[t]he use of a statutory violation to establish negligence is a

---

[8] Indeed, Smith concedes in his response brief that he is not bringing a private cause of action against Welton under HIPAA. (ECF No. 47, PageID.583).

[9] Moreover, the police body cam footage, provided separately to the Court by Welton's co-defendants, has no footage whatsoever of Welton, and shows Smith openly discussing his prior back surgery, use of a back brace, Charcot-Marie Tooth disease, and use of Percocet. (ECF No. 30). Although Smith claims that footage of Welton talking to Officer Weiler must have been "either lost or erased" (ECF No. 47, PageID.583), this is pure speculation. And, since Officer Weiler was no longer in Smith's presence during the alleged conversation at issue, there is no basis to draw the inference suggested by Smith.

[10] As a general rule, a district court does not err by refusing to consider a claim that a plaintiff does not raise until his response to a motion for summary judgment. *See Rafferty v. Trumbull Cty., Ohio*, 758 F. App'x 425, 429 (6th Cir. 2018) (citing cases).

matter of judicial discretion." *Klanseck v. Anderson Sales & Svc., Inc.*, 426 Mich. 78, 87 (1986). As the *Klanseck* court recognized, a jury instruction regarding negligence per se should be given only if (1) the statute that was violated was intended to protect against the result of the violation; (2) the plaintiff is a member of the class that the statute was intended to protect; and (3) the evidence demonstrates that the violation was a proximate contributing cause of the injury. *See id.*

Here, Smith seems to be arguing that a HIPAA violation occurred,[11] and this is the statute requiring that negligence per se be invoked. (ECF No. 47, PageID.582) ("Mr. Welton violated the HIPAA statute when he disclosed to Drew Weiler confidential [sic]."). This argument lacks merit. While "[o]ne of Congress's objectives in enacting HIPAA was to address concerns about the confidentiality of patients' individually identifiable health information," *OPIS Mgmt. Res., LLC v. Sec'y, Fla. Agency for Health Care Admin.*, 713 F.3d 1291, 1294 (11th Cir. 2013), the alleged proximately-caused "injury" here is not the disclosure of Smith's health information, but that Smith was arrested and allegedly deprived of other civil rights incident thereto. Smith does not argue that HIPAA's privacy rights were intended to protect individuals from false arrest or other deprivations of civil rights. Indeed, rather than protecting those rights, HIPAA was enacted to improve "the

---

[11] In his response brief, Smith argues that he needs to be allowed to take discovery to determine "when Mr. Welton performed an unauthorized access of [Smith's] privileged electronic medical records." (ECF No. 47, PageID.582). But such discovery is simply unnecessary, as Smith concedes he is not bringing a private cause of action against Welton under HIPAA, and, as set forth herein, HIPAA does not provide a basis for the negligence per se claim Smith seeks to bring. Thus, even if Welton did access Smith's medical records, Smith's claims, as pled, still fail as a matter of law.

efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." HIPAA § 261, Pub. L. No. 104-191, 110 Stat. 1936.

Similarly, Smith has failed to create a genuine issue of material fact as to the causation prong – namely, he has not put forth any evidence from which the Court could find a material question of fact that any alleged HIPAA violation was a proximate contributing cause of the fact that he was "arrested, incarcerated, defamed, humiliated, denied medical care, caused to suffer unnecessary pain and suffering, suffered from physical damages from aggravation of disability and Emotional Distress from the disease of Charcot Marie Tooth[,]" as he alleges. (ECF No. 47, PageID.582-83). Thus, to the extent the Court considers an unpled claim of negligence per se against Welton, summary judgment is appropriate.

Finally, to the extent Smith pleads an ordinary negligence claim against Welton – alleging in his response brief that Welton owed him "a special duty of care" and he breached that care when he chose to "defame" Smith, rather than "advocate for [his] wellbeing" (*Id.*, PageID.577) – such a claim also fails. To establish a prima facie case of ordinary negligence under Michigan law, a plaintiff must allege and prove: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *See Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). Here, the evidence conclusively establishes – via the unrebutted affidavit submitted by Welton – that he did not owe Smith a duty of care, as he "was not assigned to, nor did [he] take care of, Mr.

13

Smith while he was at ProMedica Monroe Regional Hospital." (ECF No. 41-1, PageID.521). Welton further avers that he "did not share any medical information about Mr. Smith, since [he] had no medical information to share." (*Id.*). Again, then, Smith has failed to establish a genuine issue of material fact with respect to any claim stemming from Welton's alleged discussion of his "medical case" with Officer Weiler.

> 3. *Summary Judgment is Appropriate on Smith's Defamation Claim Because it is Time-Barred*

In his complaint, Smith also alleges that Welton orally published false statements about him to Officer Weiler. (ECF No. 1, PageID.22; *see also* ECF No. 26, PageID.337-38). These alleged defamatory statements apparently were made at ProMedica Monroe Regional Hospital on July 22, 2018. (ECF No.1, PageID.19-20).

As this Court noted in a prior Report and Recommendation, dismissing Smith's defamation claim against Defendant Rick Leichty, a plaintiff must file his complaint asserting such a claim within the statute of limitations prescribed by state law – here, one year. (ECF No. 34, PageID.439-40). *See also* MCL 600.5805(11); *Mitan v. Campbell*, 474 Mich. 21, 24-25 (2005) ("a defamation claim must be filed within one year from the date the claim first accrued"). Further, a defamation claim accrues when "the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827; *see also Mitan*, 474 Mich. at 24-25.

Here, Smith's complaint was filed on July 14, 2020, well after the expiration of the one-year statute of limitations under Michigan law. Therefore, summary judgment is appropriate on Smith's defamation claim arising out of statements made on July 22, 2018.

14

In an attempt to circumvent this outcome, Smith appears to make three arguments. First, he asserts that Welton is his neighbor "who sees the plaintiff almost daily and reminds the plaintiff[] of the defamation[,]" which constitutes a "continuing ongoing tort" in violation of MCL 600.2911. (ECF No. 26, PageID.347). The Court presumes that Smith is referring to the continuing wrongs doctrine. But that doctrine is unhelpful to Smith as it "has been overruled in Michigan and is no longer valid." *Mitchell v. Woods*, No. 354617, 2021 WL 2026254, at *3 (Mich. Ct. App. May 20, 2021) (citing cases).

Second, Smith adds new allegations in his response brief that defamatory statements were published after his arrest on July 22, 2018 – namely, on August 8, 2019, August 22, 2019, and January 9, 2020. (ECF No. 47, PageID.568). There are several problems with Smith's argument in this respect. To begin with, these allegations were not pled in Smith's complaint, and, as set forth above, a district court does not err by refusing to consider a claim that a plaintiff does not raise until his response to a motion for summary judgment. *See Rafferty*, 758 F. App'x at 429. Moreover, a plaintiff alleging defamation must plead the claim "with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Thomas M. Cooley Law Sch. v. Doe 1*, 300 Mich. App. 245, 262 (2013). The plaintiff must specifically allege "who published the defamatory statement, when it was published, and, most importantly, a plaintiff must identify the precise materially false statement published." *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir. 2020) (internal quotations omitted). Here, Smith says nothing about the substance of the allegedly defamatory statements made after July 22, 2018. Rather, he suggests that certain discovery is required – including meeting minutes and transcripts – to reveal whether

15

Welton made "false statements concerning the plaintiff, published to a third person[], that lowers the plaintiff's reputation." (ECF No. 47, PageID.569). But that suggestion misconstrues Smith's pleading obligations. The law is clear that a party cannot take discovery related to a claim that is not pled with the requisite factual detail in the hope of finding evidence to support it. *See Thabata v. Green Tree Servicing LLC*, No. 14-13104, 2016 WL 2893014, at *2 (E.D. Mich. May 18, 2016) ("a party cannot use the discovery process to obtain the facts needed to support its claim after filing suit").

Finally, Smith seeks to overcome Welton's statute of limitations argument by characterizing his state law defamation claim as a "due process constitutional defamation" claim. (ECF No. 47, PageID.578). But, the label Smith attaches to his claim does not turn his state law defamation claim into a constitutional one. Indeed, Smith has not alleged any facts that would take his defamation claim outside the realm of the standard elements discussed above. *Cf. Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501-02 (6th Cir. 2007) ("A successful plaintiff [in a stigma-plus claim] must therefore show that the state's action both damaged his or her reputation (the stigma) and that it deprived [him or her] of a right previously held under state law (the plus).") (internal quotations omitted). On the contrary, Smith's complaint simply asserts that, as a result of the alleged defamatory statements, his "esteem" was lowered in the Luna Pier community. (ECF No. 1, PageID.22). His complaint contains no allegations tying the alleged defamation to the loss of any other right held under state law. *Id.* For all of these reasons, summary judgment also is warranted on Smith's defamation claim.

### III. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Welton's Motion for Summary Judgment **(ECF No. 41)** be **GRANTED.**

Dated: August 20, 2021  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 20, 2021.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager