UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK ANDREW SMITH, JR.,

                        Plaintiff,                    Civil Action No. 20-12013

v.                                      Mark A. Goldsmith
                                      United States District Judge

TIM AIMS, *et al.*,                    David R. Grand
                                      United States Magistrate Judge

                        Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT THE LUNA PIER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 30)

*Pro se* plaintiff Patrick Andrew Smith, Jr. ("Smith") commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights by various officials and institutions of the City of Luna Pier, Monroe County, and Erie Township.  (ECF No. 1). Smith's complaint arises out of a police interaction at his home following a domestic incident between Smith and his wife on July 22, 2018.

On April 23, 2021, Defendants Luna Pier Police Department, Dave Davison, Tim Aims, Drew Weiler, and Rick Leichty[1] (collectively the "Luna Pier Defendants") filed a motion for summary judgment, asserting that judgment in their favor should be entered on all of Smith's claims, as there is no genuine dispute as to any material fact.  (ECF No. 30).

_____

[1] On April 28, 2021, this Court issued a Report and Recommendation ("R&R") to Grant Defendant Leichty's Motion to Dismiss.  (ECF No. 34).  On May 24, 2021, the Honorable Mark A. Goldsmith issued an order accepting the R&R and dismissing Smith's claims against Leichty.  (ECF No. 39). Thus, the Court need not consider the merits of the instant motion as it pertains to Leichty.

Smith filed a response to the Luna Pier Defendants' motion on May 19, 2021 (ECF No. 40), and the Luna Pier Defendants filed a reply brief on June 4, 2021 (ECF No. 45). In addition, on May 13, 2021, Smith filed an "Affidavit of Patrick Smith in Support of Motion for Discovery Under Federal Rules [sic] of Civil Procedure 56(d)" (ECF No. 38), to which the Luna Pier Defendants responded (ECF No. 46) and Smith replied (ECF No. 48).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the following reasons, the Court **RECOMMENDS** that the Luna Pier Defendants' Motion for Summary Judgment **(ECF No. 30)** be **GRANTED.**

## II.   REPORT

### A.    Background

#### 1.    *The Allegations in Smith's Complaint*

In his complaint, Smith alleges that, on July 22, 2018, he was "improperly accused of domestic abuse" after he and his wife, Jennifer Smith, had a "marital disagreement," during which Smith punched a mirror, and, at some point, threw a dresser drawer, accidently striking his wife with its contents. (ECF No. 1, PageID.13, 16). In the aftermath of the "marital disagreement," Smith instructed his nephew, Gary Herin, to "call 911 for medical for Jennifer [S]mith," at which point Smith left the house to treat his own injuries. (*Id.*, PageID.13). Defendant Drew Weiler, an officer with the Luna Pier Police Department, arrived at the Smith residence to respond to the situation. (*Id.*, PageID.14).

Officer Weiler's arrival allegedly cascaded into a series of abuses of Smith by multiple law enforcement personnel, culminating in Smith's arrest by Officer Weiler and Erie Township Police Officer Parker Gutschow.

### 2.   The Facts as Depicted on Officer Weiler's Bodycam Video

The facts of this case, as they relate to the Luna Pier Defendants, are beyond dispute, as Officer Weiler's involvement in Smith's arrest was thoroughly documented on his body camera, a recording of which was provided by the Luna Pier Defendants as an exhibit to their motion for summary judgment.  (ECF No. 36).

According to Officer Weiler's body camera footage, he arrived at Smith's home – in response to a call regarding a reported medical incident and assault – at 20:21.  (*Id.*). Upon arrival, Officer Weiler was greeted at the door by a man later identified as Gary Herin, who escorted Officer Weiler to Jennifer Smith.  (*Id.* at 20:21-20:22).  Ms. Smith was lying on the floor next to a couch and appeared to be distraught and in pain.  (*Id.* at 20:22-20:49).  Medical personnel arrived shortly thereafter and began treating Ms. Smith.

While on the scene, Officer Weiler interviewed Ms. Smith, as well as eyewitnesses Mr. Herin and Chris Bondie.  (*Id.*).  When Officer Weiler initially asked Ms. Smith what had happened, she explained that her husband, Plaintiff Patrick Smith, threw a speaker at her and that it "laid [her] down real quick."  (*Id.* at 20:22-20:23, 20:26, 20:30).  Ms. Smith said that it hurt to move.  (*Id.* at 20:24).  Mr. Herin informed Officer Weiler that Smith had left prior to Officer Weiler's arrival, wearing shorts and a tank top and driving a Dodge Avenger.  (*Id.* at 20:22).  Officer Weiler relayed this information to dispatch.

When Officer Weiler questioned Mr. Herin about the incident, Mr. Herin explained

3

that he had been upstairs with Mr. Bondie when he heard yelling; the two men then went downstairs to see what was happening. (*Id.* at 20:31). At that point, Mr. Herin saw Smith throwing things around the house. (*Id.*). Mr. Herin and Mr. Bondie attempted to intervene, but that appeared to aggravate Smith. (*Id.*). From there, the situation escalated. (*Id.*). Mr. Herin stated that he tried to get Smith to stop throwing things, but he saw Smith throw a speaker at his wife, striking her. (*Id.* at 20:27). When interviewed by Officer Weiler, Mr. Bondie also indicated that he was upstairs in the home when he heard the argument. (*Id.* at 20:34). When he went downstairs, Mr. Bondie saw Smith and his wife arguing and attempted to calm Smith down. (*Id.* at 20:36). When that did not work, Mr. Bondie tried to use a fan as a shield to protect Ms. Smith from being injured. (*Id.*).

Officer Weiler then spoke to Ms. Smith as emergency medical personnel examined her. (*Id.* at 20:37). Crying, Ms. Smith stated that her husband had been having a difficult time following the death of his mother and just "snapped." (*Id.* at 20:37-38). She explained that Smith was trying to show her something, thought she was giving him "attitude," and became angry. (*Id.* at 20:38). From there, the situation escalated and Smith "just started going nuts again." (*Id.*).

Ms. Smith also told Officer Weiler that Smith threw things around the home, including a speaker, which struck her in the back. (*Id.* at 20:22-23, 20:29-30) ("He hit me twice with something in the back."). Officer Weiler and others on the scene observed injuries to Ms. Smith's lower back, which Officer Weiler photographed. (*Id.* at 20:30, 20:40). Ms. Smith also described an injury to her left ear, which Officer Weiler observed. (*Id.* at 20:30). Additionally, Ms. Smith indicated that her husband threw a bottle of lawn

4

pesticide chemicals, which also hit her.  (*Id.* at 20:41).  Mr. Herin confirmed that Smith had been throwing the bottle of pesticide everywhere and was able to provide the bottle to Officer Weiler.  (*Id.* at 20:43).  Ms. Smith received medical treatment on the scene and was taken by ambulance to the hospital.  (*Id.* at 20:22-49).  Officer Weiler then left the home.

At approximately 20:59, Officer Weiler arrived at the Iron Coffins Motorcycle Club, where Officer Gutschow had Smith detained.  During Officer Weiler's conversation with Smith, Smith acknowledged that he had been in an argument with his wife, had thrown things around his home, and that he had "probably" struck his wife with items he had thrown.  (*Id.* at 21:00-05) ("If I want to tear my house up, I'm allowed to"; "I tore that bitch up"; "I do not know if anything hit her, but I think something did fall and hit her"; "yes, I threw shit.  Did shit probably hit her?  Hell yeah."; "I threw shit.  I took my whole fuckin' dresser drawer and fuckin' threw it."; "I'm not going back home.  Fuck her.").

Seeing that Smith had injuries to his head from where he tried to scratch his head with handcuffs on, as well as injuries to his hand from punching a dresser and mirror, Officers Weiler and Gutschow ensured that Smith received medical attention on the scene before transporting him to jail.  (*Id.* at 21:15).  Indeed, when Smith indicated that his handcuffs had blood on them from his self-inflicted injuries, Officer Gutschow removed Smith's handcuffs and provided him with new ones.  (*Id.* at 21:06).  After reapplying the handcuffs, Officer Gutschow specifically asked Smith whether the handcuffs were "too tight or good."  (*Id.* at 21:07).  Smith did not complain.  Officer Gutschow also cuffed Smith's hands in front of his body at Smith's request given his reported shoulder and back pain.  (*Id.*).  When Smith later motioned with one cuff, Officer Gutschow adjusted it.  (*Id.*).

Throughout the remainder of the video at the scene, it is apparent that Smith was able to move his wrists within the handcuffs. (*Id.* at 21:10).

After ensuring that Smith received medical attention, Officer Weiler transported Smith to the Monroe County Jail. (*Id.* at 21:27). Upon arrival, Smith tried to remove his handcuffs over the bandage on his hand. (*Id.* at 21:45). Officer Weiler urged Smith to stop hurting himself and immediately removed and adjusted Smith's handcuffs to allow Smith to remove his bandages. (*Id.* at 21:45-21:46). Corrections officers at the jail also showed concern for Smith's injuries and determined that Smith should be transported to the hospital for medical care before being booked into the jail. (*Id.* at 21:46-21:47). After allowing Smith to use the restroom at the jail (*Id.* at 21:48), Officer Weiler transported and accompanied Smith to the hospital for additional medical care. (*Id.* at 22:30).

### 3.   *Smith's Claims*

In his complaint, Smith asserts federal claims against the Luna Pier Defendants under 42 U.S.C. § 1983 for false arrest and malicious prosecution in violation of the Fourth Amendment, a violation of his Fifth Amendment right against self-incrimination, and a *Monell* claim against Luna Pier Mayor Dave Davison for negligently hiring, firing, and disciplining Officer Weiler.[2] (ECF No. 1, PageID.24-26). Smith also asserts state law claims against the Luna Pier Defendants for false arrest, malicious prosecution, negligence,

---

[2] Although Smith also pleads a claim for excessive force in violation of the Fourth Amendment, based on handcuffs that were allegedly "applied sadistically[,]" he makes clear in his response to the Luna Pier Defendants' motion for summary judgment that this claim is pled only against Erie Township Police Officer Parker Gutschow, who has already been dismissed from this case. (ECF No. 55). Thus, the Court need not consider the merits of Smith's excessive force claim.

and private nuisance. (*Id.*, PageID.26-27).

## B. Standard of Review

### 1. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact

will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

The United States Supreme Court has made clear that video evidence substantiating one party's version of events can serve as controlling evidence at the summary judgment stage. *See Scott v. Harris*, 550 U.S. 372, 380-381 (2007). In *Scott*, the Court considered video evidence that came from a camera inside a police car and allowed that evidence to resolve the parties' conflicting factual accounts. *Id*. at 380. The Court refused to accept the plaintiff's version of the events because it was directly contradicted by the video evidence. *Id*. The Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.; *see also Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (where there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape).

2.    *Qualified Immunity*

In this case, Officer Weiler asserts that he is entitled to qualified immunity from Smith's § 1983 false arrest and malicious prosecution claims. (ECF No. 30, PageID.403-12). The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). Once the qualified immunity defense is raised,

"the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). A plaintiff must satisfy both of these prongs, but the Court may take up the questions in whichever order it sees fit. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (abrogating in part *Saucier*, 533 U.S. at 201).

The qualified immunity defense may be raised at any stage of the case. Where, as here, it is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *See Scott*, 550 U.S. at 377-78.

### C.    Analysis

#### 1.    *Officer Weiler is Entitled to Qualified Immunity on Smith's False Arrest and Malicious Prosecution Claims*

To prevail on his claims of false arrest and malicious prosecution against Officer Weiler, whether under state or federal law, Smith must prove the absence of probable cause. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011). Under both state and federal law, "[p]robable cause exists where there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Fineout v. Kostanko*, 780 F. App'x 317, 328 (6th Cir. 2019) (internal quotations omitted). As the Sixth Circuit has explained:

> An officer possesses probable cause when, at the moment the officer seeks the arrest, the facts and circumstances within the officer's knowledge and of which she had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense.

*Id.* (internal quotations and citations omitted).  Probable cause is assessed solely from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *See Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).  Thus, probable cause "is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."  *Sykes*, 625 F.3d at 306 (internal quotations omitted).

Probable cause to make an arrest first depends on state law.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  Here, MCL 750.81 provides, in relevant part:

> (2) … an individual who assaults or assaults and batters his or her spouse or former spouse … is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

A criminal assault is simply defined as "either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery."  *People v. Gardner*, 402 Mich. 460, 479 (1978) (internal quotations omitted).  In turn, battery is defined as "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person."  *People v. Starks*, 473 Mich. 227, 234 (2005) (internal quotations omitted).[3]

Here, Officer Weiler's bodycam footage demonstrates he had probable cause to arrest Smith for domestic violence on July 22, 2018.  As the video shows, multiple witnesses told Officer Weiler that Smith and his wife had gotten into an argument, and that

---

[3] In his discussions with Officer Weiler, Smith repeatedly stated that he did not "hit" Ms. Smith, but his additional comments, such as asking the Officer to examine his knuckles as proof, shows he simply does not understand that direct physical contact between a person and a victim is not required for an "assault" to have occurred.

Smith became increasingly agitated, throwing things around the house, causing Ms. Smith fear and distress, and physically injuring her.  When Officer Weiler arrived on the scene, the area of the house where the altercation occurred was in a shambles.  Ms. Smith told Officer Weiler that Smith threw a speaker, which struck her in the back, and Ms. Smith's anguished demeanor was consistent with someone who had just experienced the aforementioned altercation.  Officer Weiler also observed injuries to Ms. Smith's lower back, and she required assistance to stand up and get to the ambulance just outside her front door.  Both Mr. Bondie and Mr. Herin told Officer Weiler that they stepped in to protect Ms. Smith from her husband.  They also corroborated Ms. Smith's reports about Smith throwing multiple items, including a speaker, which struck and injured her.  Moreover, during Officer Weiler's conversation with Smith, Smith freely acknowledged that he and his wife had been arguing, that he threw items around the house, and that he likely hit Ms. Smith with one of these items.  Smith also became briefly irate when talking about his wife with Officer Weiler, saying, "I'm not going back home.  Fuck her."

Given all of the foregoing facts and circumstances, no material question of fact exists that Officer Weiler had a reasonable basis for believing Smith had (1) committed an intentional, unconsented, harmful or offensive touching of his wife, (2) attempted to do so, and/or (3) placed Ms. Smith in reasonable apprehension of receiving an immediate battery. *See Starks*, 473 Mich. at 234.  A reasonable belief that Smith engaged in any one of these actions is sufficient to establish probable cause to arrest him for the misdemeanor crime of domestic violence.  *See* MCL 750.81.

In his response to the Luna Pier Defendants' motion for summary judgment, Smith

argues that his arrest was unlawful because "the marital dispute had ended[,]" Officer Weiler did not have an arrest warrant, and there were no "exigent circumstances." (ECF No. 40, PageID.484, 486, 488). Smith's arguments misapprehend Michigan law, which provides that a police officer is statutorily authorized to arrest an individual if the officer "has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony *has been committed* and reasonable cause to believe the person committed it." MCL 764.15(1)(d) (emphasis added). Here, for the reasons set forth above, there is no material question of fact that Officer Weiler had at least arguable[4] probable cause to believe Smith committed the crime of domestic violence, which is punishable by imprisonment of more than 92 days. *See* MCL 750.81. As such, Officer Weiler is entitled to qualified immunity and summary judgment on Smith's false arrest and malicious prosecution claims.[5]

---

[4] The law is clear that Officer Weiler is entitled to qualified immunity so long as there was at least *arguable* probable cause for Smith's arrest. *See McLeod v. Bender*, No. 13-12878, 2015 WL 1470071, at *9 (E.D. Mich. Mar. 30, 2015) ("[I]n an unlawful arrest case in which the defendants raise qualified immunity as a defense, … [i]f the officers can establish that they had *arguable* probable cause to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later determines that they did not actually have probable cause.") (internal quotations omitted) (emphasis in original); *see also Kennedy*, 635 F.3d at 214 ("[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.") (internal quotations omitted). Thus, even if, as Smith contends, a magistrate later found a "lack of probable cause to bind over" (ECF No. 40, PageID.486), that would be irrelevant to the determination of whether Officer Weiler reasonably – even if mistakenly – believed he had probable cause to arrest Smith on the day in question. *See, e.g., DeFillippo*, 443 U.S. at 36 ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

[5] As set forth above, on May 13, 2021, Smith filed a document captioned "Affidavit of Patrick Smith in Support of Motion for Discovery Under Federal Rules (sic) of Civil Procedure 56(d)." (ECF No. 38). Rule 56(d) provides that when the nonmoving party shows by affidavit or

2.    *There Has Been No Violation of Smith's Fifth*
      *Amendment Right Against Self-Incrimination*

Smith also claims that his Fifth Amendment rights were violated because he was

interrogated, while in custody, without first being given a *Miranda* warning.  (ECF No. 1,

PageID.15, 24; ECF No. 40, PageID.489).  To the extent this claim is pled against Officer

Weiler, summary judgment is warranted.

As the United States Supreme Court has highlighted, the Fifth Amendment

---

declaration that he cannot present facts essential to justify his opposition to a motion for summary
judgment, a court may defer or deny the motion or may allow time for discovery, or some other
action.   "A party invoking [the] protections [of Rule 56(d)] must do so in good faith by
affirmatively demonstrating ... how postponement of a ruling on the motion will enable him ... to
rebut the movant's showing of the absence of a genuine issue of fact."  *F.T.C. v. E.M.A Nationwide,
Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (internal quotations omitted).  The party opposing a motion
for summary judgment has no absolute right to additional time for discovery under Rule 56, and a
district court does not abuse its discretion in denying discovery when the discovery requested
would be irrelevant to the underlying issue to be decided.  *See Doe v. City of Memphis*, 928 F.3d
481, 490 (6th Cir. 2019).  In his affidavit, Smith urges the Court to defer consideration of the Luna
Pier Defendants' motion, seeking the production of 25 separate items.  (ECF No. 38).  However,
many of these items are entirely unrelated to his claims against the Luna Pier Defendants.  (*See,
e.g., id.*, PageID.464 ("Erie's Police Department's computers associated with, the bodycam actual
footage of the Officer Gutschow"; 466 ("The video of the Plaintiff being walked from the jail to
the courthouse so to document the lack of orthotic and back braces")).  Although Smith alleges
that discovery of the items set forth in his affidavit is essential, he fails to describe why *any* of the
referenced documents are relevant for purposes of resolving the instant dispositive motion.  Indeed,
all of Smith's allegations with respect to the Luna Pier Defendants stem from Officer Weiler's
investigation of the alleged domestic violence incident at issue and his subsequent arrest of Smith,
and these encounters are captured on Officer Weiler's body camera footage.  Because that video
footage is dispositive as to Smith's claims, and would be unaffected by the evidence Smith seeks,
there is simply no need for the requested discovery.  *See Aldridge v. City of Warren*, 682 F. App'x
461, 462-64 (6th Cir. 2017) (denying Rule 56(d) motion where video evidence clearly
demonstrated the falsity of the plaintiff's allegations that he was dragged across the ground by
police officers, beaten, and handcuffed).  Indeed, courts have found it particularly appropriate to
decide a summary judgment motion on the merits, even when the non-moving party seeks
discovery pursuant to Rule 56(d), where, as here, the principal issues are qualified immunity and
state governmental immunity.  *See Ghaith v. Rauschenberger*, 778 F. Supp. 2d 787, 796 (E.D.
Mich. 2011) ("If the Defendants are immune from suit, they should not be required to comply with
the burdens of discovery….").  Thus, to the extent Smith's affidavit **(ECF No. 38)** is construed as
a motion seeking discovery, such motion is **DENIED**.

"requires that '[n]o person … shall be compelled *in any criminal case* to be a *witness* against himself.'"  *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (quoting U.S. Const., Amdt. 5 (emphases in *Chavez*))."  Where, as here, a person is never made to be a "witness" against himself in a criminal proceeding, he cannot demonstrate any violation of this Fifth Amendment right.  *See id.* at 767; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990).

Case law holds that the mere failure to provide a *Miranda* warning does not violate a person's constitutional rights and cannot form the basis for a § 1983 action.  *See Chavez*, 538 U.S. at 772-73 (quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1974) (Miranda's safeguards "were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected")); *Connecticut v. Barrett*, 479 U.S. 523, 528 (1987) (*Miranda's* warning is "not itself required by the Fifth Amendmen[t] ... but is instead justified only by reference to its prophylactic purpose").  In sum, even assuming Officer Weiler failed to *Mirandize* Smith, he is still entitled to summary judgment on Smith's Fifth Amendment claim because: (1) failing to give a *Miranda* warning is not a Fifth Amendment violation; and (2) Smith was not compelled to be a witness against himself in a criminal prosecution.

### 3.    *Smith's* Monell *Claim Fails as a Matter of Law*

In his complaint, Smith names as defendants the Luna Pier Police Department and its Police Chief, Tim Aims, and Mayor, Dave Davison.  It makes sense to address Smith's *Monell* claims against the individuals and the Police Department separately.

### a.    Individual Defendants

As an initial matter, Smith fails to set forth any factual allegations establishing any plausible claims against Chief Aims.  It is well-settled that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under § 1983 and that liability cannot be premised upon a theory of *respondeat superior* or vicarious liability. *See Teague v. Genesee Cty.*, No. 21-12367, 2021 WL 5040322, at *2 (E.D. Mich. Oct. 29, 2021) (citing cases).  Here, Smith's complaint does not contain a single factual allegation concerning Chief Aims, let alone allegations of his personal involvement in the alleged wrongdoing surrounding Smith's arrest.  Indeed, Smith claims that Chief Aims "walked out of the chief police of police [sic] job, thus allowing Mayor Dave Davison to have exclusive control over the police officers."  (ECF 1, PageID.22).  In other words, Smith concedes that Chief Aims had no personal involvement in his arrest and, thus, he fails to state any viable claim against Chief Aims.

With respect to Mayor Davison, even liberally construed, Smith pleads only an "official capacity" claim under *Monell*.  (ECF No. 1, PageID.23) ("This is an action for the defendants on their official and professional capacity.").  "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  It requires that Smith demonstrate not only that his constitutional rights were violated but that the City's policy or custom of improper hiring, disciplining, or failing to train its employees caused the constitutional violation. *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 123 (1992).  "This means that the plaintiff must show a direct causal link between the policy and the alleged constitutional

violation such that the [municipal policy] can be deemed the moving force behind the violation." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (internal quotations omitted). Smith cannot do so.

First, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). As set forth above, the undisputed video evidence establishes that Officer Weiler did not violate Smith's constitutional rights. With no underlying constitutional violation, Smith's official capacity claim against Mayor Davison necessarily fails.

Second, even with an underlying violation, "[s]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Rather, the supervisors must have actively engaged in unconstitutional behavior." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (internal quotations and citations omitted); *see also Bennett v. City of Eastpointe*, 410 F.3d 810, 823 (6th Cir. 2005) (holding that police chiefs were entitled to summary judgment on plaintiff's claims of supervisory liability where there was no evidence that either chief encouraged any Fourth Amendment misconduct); *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (explaining that the "failure to discipline and failure to act, do not constitute 'active constitutional behavior' as required [to state a claim for supervisory liability] and thus, are not actionable"). Here, with respect to Mayor Davison, Smith alleges only that, on July 30, 2018, ***eight days after Smith's arrest***, Mayor Davison reviewed Officer Weiler's bodycam footage and suspended Officer Weiler without pay for two weeks, later terminating Officer Weiler's employment. (ECF No. 1, PageID.20-21). Even assuming the truth of Smith's

allegations in this respect, the investigation or discipline by Mayor Davison could not have caused or contributed to any violation of Smith's rights in connection with his arrest.

> b.   *Luna Pier Police Department*

Smith's vague assertions against the Luna Pier Police Department of "negligen[ce]" in hiring, training, supervising, disciplining and retention of employees (*Id.*, PageID.24, 25-26) fail to state a *Monell* claim on multiple levels.  First, any claims against the Police Department must be dismissed because, under Michigan law, a police department is not a separate legal entity and, therefore, cannot sue or be sued.  *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007).  Second, even construing Smith's claims against the Police Department as claims against the City of Luna Pier, summary judgment is appropriate.  To establish his *Monell* claim against the City based on a "failure to train" or "failure to supervise," Smith was required to show "(1) a clear and persistent pattern of illegal activity, (2) which the [municipality] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [municipality's] custom was the cause of the deprivation of [the plaintiff's] constitutional rights."  …   For this type of *Monell* claim, [the plaintiff] must show that [the municipality] ignored a 'clear and persistent pattern of misconduct' that should have prompted corrective training for the Deputies."  *Razmus v. Kent Cty.*, No. 1:20-CV-451, 2021 WL 5504819, at *5 (W.D. Mich. Nov. 24, 2021) (internal citations omitted).  Here, however, Smith alleges no *facts* from which one could conclude a "clear and persistent pattern" of misconduct existed with respect to any hiring, training, or supervision practices.  His allegations of mere "negligence" with respect to those functions clearly do not give rise to a constitutional

violation.  *See Fettes v. Hendershot*, 375 F. App'x 528, 532 (6th Cir. 2010) ("negligence does not equate to a constitutional violation").

For all of the above reasons, summary judgment is appropriate on Smith's *Monell* claims against each of the Luna Pier Defendants.

> 4.   *Smith's State Law Claims Fail as a Matter of Law*
>
>> a.   *Negligence Claim*

Smith also appears to plead a state law claim for negligence against Mayor Davison, alleging that he was negligent in hiring, firing, training and/or disciplining Officer Weiler. (ECF 1, PageID.25; ECF No. 40, PageID.484 (Mayor Davison "disregarded the past history of unreliability of Drew Weiler while performing as a police officer, and proceeded to hire Drew Weiler")).  Smith further alleges that Mayor Davison "had a duty to properly hired, fired, trained, and disciplined [sic] the police officers" and claims that "plaintiff can recover damages from Dave Davison based on negligence."  (ECF No. 1., PageID.25, 26). This is incorrect.

Under the plain language of the Michigan Governmental Tort Liability Act ("GTLA"):

> [a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

MCL 691.1407(5); *see also Petipren v. Jaskowski*, 494 Mich. 190, 204 (2013).   The immunity provided to a highest appointive executive official is absolute.  *Id.*  Here, Smith explicitly alleges that "Chief Aims walked out of the chief police of police [sic] job, thus

allowing Mayor Dave Davison to have exclusive control over the police officers" (ECF No. 1, PageID.23), making clear that Mayor Davison was the highest-ranking executive official and that he acted within the scope of his authority in taking the actions alleged in Smith's complaint. Accordingly, Mayor Davison is entitled to absolute immunity under the GLTA. *See Petipren*, 494 Mich. at 215 (police chief is entitled to immunity as highest-ranking executive official for actions taken within the scope of that authority).

### b.    *Private Nuisance Claim*

Smith's "private nuisance" claim against Officer Weiler lacks any legal basis. (ECF No. 1, PageID.27). "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 302-03 (1992) (citing 4 Restatement Torts, 2d, Sec 821D, p. 100). Because there is nothing in Smith's complaint that even begins to resemble a private nuisance claim, Officer Weiler is entitled to summary judgment on this claim as well.

### 5.    *Claims Raised by Smith in His Response Brief are Without Merit*

In response to the Luna Pier Defendants' motion for summary judgment, Smith attempts, to no avail, to plead several claims that were not referenced in his original complaint. As an initial matter, it is improper for a plaintiff to seek to avoid summary judgment by raising claims for the first time in a response brief. *See, e.g., Rafferty v. Trumbull Cty., Ohio*, 758 F. App'x 425, 429 (6th Cir. 2018) (citing cases). But, even if the Court were to consider the merits of Smith's new allegations, they too are without merit.

As he did in his complaint, Smith repeatedly references the Americans with Disabilities Act ("ADA") in his response brief; however, any claim under the ADA fails.

In order to state a claim under Title II of the ADA, which applies to state and local governments, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or was denied the benefits of the services, programs, or activities of a public entity; and (3) that such discrimination was ***because of his disability***.  *See* 42 U.S.C. § 12132; *see also Thompson v. Williamson Cty., Tenn.*, 219 F.3d 555, 557 (6th Cir. 2000).  In this case, there is no dispute that Smith was arrested and that he alleges he is disabled.  However, Smith does not allege that he was arrested ***because*** he was disabled.  Rather, as detailed throughout his complaint and response brief, Smith asserts that the issue with his arrest is that it was made without probable cause.  Because Smith does not allege – nor is there any evidence of – discriminatory animus on the part of any of the defendants, Smith has failed to state a claim under the ADA.

In his response brief, Smith also asserts that some of the Luna Pier Defendants were engaged in a "joint enterprise" or civil conspiracy under 42 U.S.C. § 1985(3) "for the unlawful purpose of causing false arrests."  (ECF No. 40, PageID.482).  This claim fails for multiple reasons.  First, Smith pled no such claim in his complaint.  Second, in order to establish a conspiracy under 42 U.S.C. § 1985(3), a plaintiff must show that the alleged conspiracy was motivated by racial or other class-based animus.  *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).  Here, Smith has made no such allegations, but has simply asserted that members of Luna Pier and Monroe County law enforcement worked together to perform ordinary police work.  (ECF No. 40, PageID.482-83) (there was an agreement to locate suspects "via a joint radio and telephone operations," detain suspects from one another's jurisdiction, coordinate arrests, move prisoners to the Monroe County Jail, pay

for prisoners who end up in the Monroe County Jail, and ensure that those prisoners end up in front of a magistrate). All told, Smith offers none of the factual specificity required to assert a conspiracy to deny civil rights. *See, e.g., Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987) ("conspiracy claims must be pled with some degree of specificity and … vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim"). And, lastly, a conspiracy to deny civil rights is a derivative claim, which cannot exist if there is no underlying denial of civil rights. *See Graham v. City of Mentor*, 118 F. App'x 27, 32 (6th Cir. 2004) (affirming dismissal of conspiracy claim where plaintiffs failed to show viable underlying retaliation claim). Because Smith asserts that the goal of the conspiracy was false arrests, and because Officer Weiler had at least arguable probable cause to arrest Smith, as set forth above, *supra* at 9-13, Smith's joint enterprise/civil conspiracy claim would fail as a matter of law even if it had been properly pled.

In his complaint, Smith also appears to plead an Eighth Amendment claim against Defendants Dale Malone and/or Major Troy Goodnough of the Monroe County Sheriff's Department for denial of medical care while confined at the Monroe County Jail. (ECF No. 1, PageID.18, 19, 24) ("At the Monroe County Jail, [Smith] was denied medical care"; "The Monroe County sheriffs deliberately refused to give [Smith] the orthotics and medication that Jennifer wanted to take up to the jail for [him]"; "Sherriff [sic] Chief Dale Malone and Major Troy Goodnough were responsible to insure [sic] the presence of, and the implementation of appropriate polices. The plaintiff was denied medical care while detained at the Monroe County Jail."). In his response brief, Smith more generally asserts

– without reference to any specific defendant – that he "was denied medical care, denied his medications, denied his orthotics, and forced to walk barefooted to the courthouse." (ECF No. 40, PageID.490). To the extent Smith is attempting to plead this claim against Officer Weiler – which is not at all apparent from his filings – such a claim fails as a matter of law because the Eighth Amendment does not apply to arrestees, or even pretrial detainees. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). Moreover, it is clear from Officer Weiler's body camera video that Officer Weiler ensured Smith received medical treatment while detained at the Iron Coffins Motorcycle Club and subsequently took him to the hospital for further treatment of his injuries. (ECF No. 36). It is equally clear that Smith himself admitted that whether he received his medications and back brace was the decision of the county jail, not Officer Weiler. (*Id.* at 22:30-22:43). Thus, even if Smith had properly pled a denial-of-medical-care claim against Officer Weiler, he would be entitled to summary judgment on such a claim.

## III.  CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that the Luna Pier Defendants' Motion for Summary Judgment **(ECF No. 30)** be **GRANTED.**


Dated: January 12, 2022                       s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge

### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy

hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 12, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager