UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK ANDREW SMITH, JR.,

          Plaintiff,          Civil Action No. 20-12013

v.          Mark A. Goldsmith
          United States District Judge

TIM AIMS, *et al.*,          David R. Grand
          United States Magistrate Judge

          Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT THE MONROE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 76)

### I. RECOMMENDATION

*Pro se* plaintiff Patrick Andrew Smith, Jr. ("Smith") commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights by various officials and institutions of the City of Luna Pier, Monroe County, and Erie Township. (ECF No. 1). In relevant part, Smith's claims against the remaining defendants[1] – Dale Malone, former Monroe County Sheriff, and Troy Goodnough, current Monroe County Sheriff (collectively the "County Defendants") arise out of his arrest and incarceration at the Monroe County Jail from July 22, 2018 to July 24, 2018.

On November 18, 2022, the County Defendants filed a motion for summary judgment, asserting that judgment in their favor should be entered on all of Smith's claims

---

[1] Previously, this Court has dismissed Smith's claims against all of the other named defendants. (ECF Nos. 34, 39, 56, 58, 64, 65).

against them, as there is no genuine dispute as to any material fact. (ECF No. 76). Because Smith has failed to oppose the County Defendants' motion for summary judgment, despite having twice been ordered to do so, and for the other reasons discussed below, the Court **RECOMMENDS** that the County Defendants' Motion for Summary Judgment **(ECF No. 76)** be **GRANTED.**

II.  **REPORT**

   A.  **Background**

In his complaint, Smith alleges that, on July 22, 2018, he was "improperly accused of domestic abuse" after he and his wife, Jennifer Smith, had a "marital disagreement," during which Smith punched a mirror, and, at some point, threw a dresser drawer towards his wife, the contents of which allegedly struck her accidentally. (ECF No. 1, PageID.13, 16). In the aftermath of the "marital disagreement," Smith instructed his nephew, Gary Herin, to "call 911 for medical for Jennifer [S]mith," at which point Smith left the house to treat his own injuries. (*Id.*, PageID.13). Smith was subsequently arrested by Luna Pier Police Officer Drew Weiler and Erie Township Police Officer Parker Gutschow.

These officers transported Smith to the Monroe County Jail, where – according to Smith's own deposition testimony – he was taken to the hospital, treated for a cut on his hand, released, and returned to the Monroe County Jail. (ECF No. 76-1, PageID.906-07). Smith was booked into the Jail at approximately 3:19 a.m. on July 23, 2018, where he was medically screened at intake.[2] (*Id.*, PageID.909-10; ECF No. 76-2). The Medical

---

[2] With their motion for summary judgment, the County Defendants submitted evidence that, at the time of Smith's incarceration, the Jail had policies and procedures in place regarding the medical

Screening Form notes that Smith had "ease of movement, and/or visible body deformities"; "bleeding, jaundice, tremors, sweating, or persistent cough"; and had previously undergone back surgery. (*Id.*, PageID.933). It was also noted that Smith had been treating with Percocet and Valium. (*Id.*, PageID.934). During his deposition, Smith acknowledged signing the Medical Screening Form and admitted that it accurately captured his ongoing medical issues at the time of his incarceration. (ECF No. 76-1, PageID.910-11).

Following his booking, Smith received repeated evaluations by the Jail's medical providers[3] before his discharge from the facility approximately 36 hours later. (*Id.*, PageID.906, 910-11). Notably, Smith's first interactions with these providers occurred within a few hours of his booking on the morning of July 23rd. (*Id.*, PageID.910). Smith's vitals were checked, and he was evaluated for the injuries from the incident as well as his long-term issues, including deformities to his hands and feet. (ECF No. 76-6, PageID.963). Notes indicate that "no new orders" were needed and that follow-up would be provided as needed. (*Id.*). Smith's medical records note that he was again evaluated by nursing staff at approximately 11:00 a.m. on July 24th after multiple corrections officers relayed Smith's complaints regarding his potential withdrawal. (ECF No. 76-7, PageID.967). Smith's vitals were checked and his pharmacy was contacted to verify his prescriptions; however, no new orders were placed because Smith "stated he was going to court and he would be

---

and mental health treatment of inmates. (ECF No. 76-8). These policies provide for the humane treatment of inmates and appropriate medical screenings. (*Id.*).

[3] The Jail utilizes outside medical contractors for its inmate medical and mental health services. (ECF No. 76-5, PageID.940-42).

3

leaving" shortly thereafter. (*Id.*). Smith was released from the Jail shortly thereafter at 11:48 a.m. on July 24, 2018. (ECF No. 76-1, PageID.912-13; ECF No. 76-2, PageID.931).

In his complaint, filed on July 14, 2020, Smith sues the County Defendants – solely in their official capacities – for allegedly violating his constitutional rights and his rights under the Americans with Disabilities Act ("ADA") by failing to provide him with adequate medical care during his incarceration. (ECF No. 1).

On November 18, 2022, the County Defendants filed a motion for summary judgment. (ECF No. 76). On November 21, 2022, this Court issued an Order Requiring Response, specifying that Smith was required to file a response to the County Defendants' motion on or before December 12, 2022. (ECF No. 79). When Smith had failed to do so by December 21, 2022, this Court issued an Order to Show Cause, requiring a response by January 4, 2023. (ECF No. 80). In that Order, Smith was specifically warned that, "**Failure to file a timely and adequately respond in writing to this Order to Show Cause, or to timely file a response to Defendants' motion, may result in a recommendation that Defendants' motion be granted and/or that Smith's claims be dismissed under Fed. R. Civ. P. 41(b)**." (*Id.* (emphasis added)). To date, however, Smith has neither filed a response in opposition to the County Defendants' motion, nor has he responded to the Court's Order to Show Cause.

**B.     Analysis**

Federal Rule of Civil Procedure 41 governs dismissals of actions. As to involuntary dismissals, Rule 41(b) provides:

4

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) … operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). It is clear that, despite the somewhat permissive language of Rule 41(b), which contemplates a motion by a defendant, a federal court may *sua sponte* dismiss a case for failure to prosecute or comply with an order. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-32 (1962); *Steward v. City of Jackson*, 8 F. App'x 294, 296 (6th Cir. 2001). As the *Link* court explained, "Neither the permissive language of [Rule 41(b)] – which merely authorizes a motion by the defendant – nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link*, 370 U.S. at 630. "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30.

The Sixth Circuit considers four factors in reviewing the decision of a district court to dismiss a case for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (quoting *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999)).

With respect to the first factor, it is not clear whether Smith's failure to respond to

5

the County's Defendants' motion for summary judgment is due to willfulness, bad faith, or fault. However, the Court notes that Smith has not participated in this case in any meaningful way in more than five months Specifically, after appearing for his deposition on August 15, 2022 (ECF No. 76-1), there is no indication that Smith engaged in further discovery; he did not file a response to the County Defendants' dispositive motion; and he failed to respond to the Court's December 21, 2022 Order to Show Cause, even when warned that a failure to do so could result in the defendants' motion being granted (ECF No. 80). Thus, the first[4] and third factors weigh in favor of dismissal. As to the second factor, the County Defendants are prejudiced by having this action pending against them without it being advanced to a timely conclusion due to Smith's apparent abandonment of his claims. The Court is sympathetic to the County Defendants' plight, as they have been forced to expend time and resources researching and drafting their motion for summary judgment, despite the fact that Smith apparently has lost interest in his case.

Finally, the fourth factor weighs heavily in favor of dismissal, as Smith has been given a clear warning that his failure to respond to the County Defendants' motion and/or this Court's Order to Show Cause could result in dismissal of his claims. As set forth above, since sitting for his deposition in August 2022, Smith has taken no apparent action to advance his case; his failure to respond to both the pending dispositive motion and the

---

[4] With respect to the first factor, just as in *White v. Bouchard*, No. 05-73718, 2008 WL 2216281, at *5 (E.D. Mich. May 27, 2008), "it is not clear whether plaintiff's failure to prosecute is due to willfulness, bad faith or fault." Regardless, "defendants cannot be expected to defend an action which plaintiff has apparently abandoned, not to mention the investment of time and resources expended to defend this case." *Id*.

Court's Order to Show Cause is inexcusable. Given these facts, and in light of the Court's express warning to Smith that his claims could be dismissed if he failed to act, the Court sees no utility in imposing a sanction short of dismissal. Thus, all four of the factors weigh in favor of dismissal for failure to prosecute.

Moreover, the Court notes that the County Defendants' cogent motion for summary judgment and brief in support, to which Smith did not respond, explains in detail why Smith's remaining claims fail to survive such a motion. (ECF No. 76). Broadly speaking, Smith alleges that Malone and Goodnough violated his constitutional right to adequate medical care, as well as his rights under the ADA. (ECF No. 1). Smith's claims against these defendants are official capacity claims, i.e., they arise solely from the actions of Malone and Goodnough allegedly taken in their respective roles as Monroe County Sheriffs. But, for the reasons set forth below, and in greater detail in the County Defendants' brief in support of their motion for summary judgment, the Court finds that there exists no genuine issue of material fact with respect to Smith's claims against the County Defendants and, thus, those claims should be dismissed pursuant to Rule 56:

- Smith's complaint seeks relief against former Sheriff Malone and current Sheriff Goodnough in their official capacities. (ECF Nos. 1, 68). In § 1983 litigation, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n. 4 (6th Cir. 2000). Because Smith's official capacity claims against Malone and Goodnough are more accurately described as claims against Monroe County itself, Smith must plead and prove a municipal liability claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

- In order to establish liability under *Monell*, a plaintiff must identify the official policy or custom that caused his injury. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Once the policy is identified,

7

"a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

- The Sixth Circuit has identified four ways in which a plaintiff may plead and prove that a municipality's policy, custom, or usage was the moving force behind the alleged constitutional violation: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

- Here, although it is unclear which of these four theories Smith relies on, it is clear that he cannot succeed on a *Monell* claim. First, at his deposition, Smith could not specifically identify any Monroe County policy that he contends is unconstitutional and resulted in the alleged tortious conduct. (ECF No. 76-1, PageID.908-09, 925). This is insufficient to meet the high standard associated with a claim based on an official policy. *See Estate of Abbey v. Herring*, 598 F. Supp. 3d 572, 588-90 (E.D. Mich. 2022). Next, to succeed on a claim under *Monell's* second prong, Smith would have to show that either Malone or Goodnough failed to rectify some pattern of unconstitutional behavior or failed to intervene when the inappropriate conduct was occurring. *See Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985). Smith admitted at his deposition, however, that he never interacted with Malone or Goodnough and was unaware of any personal involvement they had in his incarceration. Thus, any such failure to intervene claim also fails. Third, to the extent Smith asserts a failure to train claim, it also fails, as he has come forward with no evidence regarding Monroe County's training programs or their alleged inadequacy. *See Estate of Abbey*, 598 F. Supp. 3d at 590 (dismissing plaintiff's failure to train claim based on the lack of any "particular allegations regarding the training" provided to the officers at issue). And, finally, Smith's claim under the fourth prong also fails because a § 1983 custom-of-tolerance claim asserted under an "inadequate investigation" or failure to discipline theory "requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Here, where Smith failed to allege facts regarding any similar prior incidents, or a pattern of misconduct on the part of the County – and, indeed, specifically denied any knowledge of the same (ECF No. 76-1, PageID.915) – dismissal of such a claim is warranted.

- Finally, Smith has also alleged that the County Defendants violated the ADA during his brief incarceration. To establish a *prima facie* case under Title II of the ADA, which applies to public entities, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in a program, being denied the benefits of a program, or being subjected to discrimination under a program solely because of his disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Smith has failed to come forward with any evidence that he was denied the right to participate in a program provided by the Jail; rather, he repeatedly admitted that his claims were about the *quality* of medical care he received at the Jail, not the access itself. (ECF No. 76-1, PageID.924). Courts have routinely rejected similar claims – *i.e.*, claims based on nothing other than the alleged denial of adequate medical care – brought under the ADA. *See, e.g., Winburn v. Davis*, No. 08-14996, 2009 WL 3004555, at *5 (E.D. Mich. Sept. 16, 2009) ("The [ADA] is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."); *Stevens v. Hutchinson*, No. 1:13-cv-918, 2013 WL 4926813, at *4 (W.D. Mich. Sept. 12, 2013). Thus, Smith's ADA claim fails.

For all of the foregoing reasons, summary judgment should be granted in favor of the County Defendants.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the County Defendants' Motion for Summary Judgment **(ECF No. 76)** be **GRANTED** and that Smith's complaint **(ECF No. 1)** be **DISMISSED WITH PREJUDICE**.

Dated: January 24, 2023  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file

specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2023.

                                                         s/Eddrey O. Butts
                                                        EDDREY O. BUTTS
                                                        Case Manager